Affirmed and Memorandum Opinion filed June 15, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00196-CR

___________________

 

Timothy Lee Richardson, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 185th District Court

Harris County,
Texas



Trial Court Cause No. 1157087

 



 

 

MEMORANDUM OPINION

Appellant, Timothy Lee Richardson, appeals
from his conviction for possession of a controlled substance with intent to
deliver. A jury found him guilty and assessed punishment at thirty-five years’
confinement. In two issues, appellant challenges the legal and factual
sufficiency of the evidence. We affirm. 

I.  Background

On December 3, 2007, Houston Police Department (“HPD”)
Officer B.K. Gill began an investigation at an apartment complex. He testified
that a confidential informant’s tip on drug dealing in several identified apartments
within the complex triggered the investigation. While on surveillance, Officer
Gill observed heavy visitor traffic at the targeted apartments, which he
designated “apartments 1, 12, 4 and 9.” A week later, he returned to the
apartment complex. At this time, he arranged a controlled buy of crack cocaine through
the confidential informant at apartment 1. He also observed appellant answer
the door to apartment 4 on a couple of occasions. 

On January 8, 2008, the investigation resumed.
Officer Gill testified that he observed appellant meet several different visitors
at the door to apartment 4.  Appellant also walked from that apartment to the
parking lot where he made discreet exchanges for money with people sitting inside
a vehicle. A week later, Gill again observed appellant answer the door to apartment
4 numerous times in a short period, letting some visitors in and turning others
away. 

Officer Gill and his partner, HPD Officer P.T. Esquibel,
both testified that, on March 4, 2008, they managed a controlled buy of crack
cocaine at apartment 4 through the informant as their agent. Officer Gill
testified that he observed an unknown man answer the door to apartment 4 after
the informant knocked. After the controlled buy, Officer Gill debriefed the
informant. The informant identified the man who answered the door as Cameron
Kelley; he also stated he observed a man who went by the nickname of “Lil’ Tim”
sitting at the table “cutting up” about 3 ounces of crack cocaine. Officer Gill
further testified that the physical description of Lil’ Tim provided by the informant
closely matched that of appellant. 

On March 6, 2008, Officer Gill obtained a no-knock search-and-arrest
warrant for apartment 4 with Cameron Kelley listed as the primary suspect. According
to Gill, appellant’s name did not appear on the warrant because he was known only
by an alias. Gill and Esquibel both testified that, upon forced entry into
apartment 4, they observed four people, one of whom was appellant, standing
around the dining room table. No one was holding drugs or cash. A search of the
apartment uncovered crack cocaine and marijuana. Most of the drugs were
concealed: 3.9 grams of crack cocaine in a medicine bottle stuffed inside a
package of dry noodles, nine packets of crack cocaine in a cereal box, five
small bags of marijuana in a kitchen cabinet, and 102 grams of marijuana in a
washing machine in one of the two bedrooms. On top of the stove hood, were an
additional thirty-nine packets of powder cocaine in clear plastic bags,
weighing fourteen grams total.  A set of scales was sitting on the stove hood
next to the drugs. When the police entered, appellant was standing by the
dining table, about six to eight feet from the stove hood.

Officer Gill further testified that he smelled
marijuana as he approached the unlocked bedroom in the apartment. The second
bedroom was locked and contained items belonging to the primary suspect,
Cameron Kelley, who was not present during the search. Mail addressed to Kelley
was found in the room, although the mail contained an address different from that
of the apartment. In addition, the officers found clothes matching the description
of clothing worn by Kelley during prior surveillance.

Other items found in the apartment linked the
appellant to the premises. Officer Gill testified that on the living room wall
were at least ten pictures, each depicting appellant. On a side table in the
living room area, a letter was found addressed to “Lil’ Tim” at the apartment 4
address, postmarked March 1, 2008. Officer Gill questioned appellant’s wife,
who was one of the four people standing around the table, about whether they
lived in the apartment. She denied that they had ever lived in the apartment,
but when confronted with the letter, she stated that her husband just had his
mail sent to the apartment. Appellant did not have keys to the apartment on his
person during the search, and the apartment was not leased in his name. 

The officers concluded the search with the arrest of
appellant and his co-defendant, Marcus Smith. Smith had stated during the
police search that he was the sole possessor of all the narcotics in the
apartment. 

At trial, HPD Officer R.P. Johnson provided additional
testimony linking appellant to the apartment. Johnson had responded to a 911 call
of criminal mischief in the late afternoon of October 13, 2007. Appellant’s
wife had reportedly broken the windows of his car in the parking lot of the
apartment complex. In response to questioning, appellant told Officer Johnson
that his home address was apartment 4. 

The Defense called two witnesses: appellant’s wife
and his cousin. Both witnesses were standing around the table with appellant
upon entry by the police. Appellant’s cousin, Warren Richardson, testified that
appellant lived in an apartment with his [appellant’s] wife in a different apartment
complex. He claimed that appellant and members of his family visited apartment 4
a couple of times a week for a barbeque. On the occasion of the search, Marcus
Smith had admitted Richardson to the apartment so that he could sign over a car
title to appellant and his wife. Richardson further testified that appellant
has never been referred to as “Lil’ Tim” and that Cameron Kelley’s friend
Timothy Rodgers used that nickname. 

Appellant’s wife corroborated that appellant has
never been referred to as “Lil’ Tim” and has never lived at apartment 4. She
denied that the police questioned her about the letter addressed to “Lil’ Tim.”

Appellant was charged with one felony count of
possession of more than four grams and less than 200 grams of cocaine with the
intent to deliver. He was tried before a jury and convicted. The jury then assessed
punishment at thirty-five years’ confinement. This appeal followed. 

II.  Possession of a Controlled Substance

In two issues, appellant challenges the legal and
factual sufficiency of the evidence supporting his conviction for possession of
a controlled substance. He does not challenge the separate element of intent to
deliver. In Texas, an individual commits an offense if he knowingly or
intentionally possesses a controlled substance. See Tex. Health &
Safety Code Ann. § 481.115. When an accused is charged with unlawful possession
of a controlled substance, the State must prove beyond a reasonable doubt that (1)
the defendant exercised actual care, custody, control or management over the
substance; and (2) the accused knew the object he possessed was contraband. Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether
the evidence is direct or circumstantial, it must establish that the
defendant’s connection with the drug was more than fortuitous. Evans v.
State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). This is referred to as
the “affirmative links” rule. It protects the innocent bystander, relative, roommate,
or friend from conviction merely by their proximity to another’s drugs. Id.
at 162. An individual’s mere presence at the location where drugs are
discovered is thus insufficient, by itself, to establish actual care, custody
or control of those drugs. Id. Therefore, “when the accused is not in
exclusive possession of the place where the substance is found, it cannot be
concluded that the accused had knowledge of and control over the contraband unless
there are additional independent facts and circumstances which affirmatively
link the accused to the contraband.” Poindexter, 153 S.W.3d at 406 (citing
Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)).  

An affirmative link generates a reasonable inference
that the accused knew of the contraband’s existence and exercised control over
it. Washington v. State, 902 S.W.2d 649, 652 (Tex. App.—Houston [14th
Dist.] 1995, pet. ref’d). However, the link need not be so strong that it
excludes every other reasonable hypothesis except the defendant’s guilt. Brown
v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). Further, it is not
the number of links that is dispositive, but rather it is the logical force of
all of the evidence, direct and circumstantial. Evans, 202 S.W.3d at
162. Some relevant factors that may affirmatively link an accused to contraband
include: (1) the defendant’s presence when a search is conducted; (2) whether the
contraband was in plain view; (3) the defendant’s proximity to and the
accessibility of the narcotic; (4) whether the defendant was under the
influence of the narcotics when arrested; (5) whether the defendant possessed
other contraband or narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8)
whether the defendant made furtive gestures; (9) whether there was an odor of
contraband; (10) whether other contraband or drug paraphernalia were present;
(11) whether the defendant owned or had the right to possess the place where
the drugs were found; (12) whether the place where the drugs were found was
enclosed; (13) whether the defendant was found with a large amount of cash; and
(14) whether the conduct of the defendant indicated a consciousness of guilt. Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.);
Cuong Quoc Ly v. State, 273 S.W.3d 778, 781 (Tex. App.—Houston [14th
Dist.] 2008, pet. ref’d). These factors are a non-exclusive list. Evans,
202 S.W.3d at 162 n.12. 

A.    Legal
Sufficiency

In his first issue, appellant challenges the legal
sufficiency of the evidence. In a legal sufficiency review, we view all the
evidence in the light most favorable to the verdict and determine whether,
based on the evidence and reasonable inferences, a rational juror could have
found the essential elements of the crime beyond a reasonable doubt. Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
to their testimony. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007). The reviewing court must give deference to the responsibility of
the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.
Hooper, 214 S.W.3d at 13. 

Appellant argues that there is no evidence linking
him to control over the apartment where the drugs were found or to possession of
and control over the contraband. First, relating to control of the apartment, appellant
contends that it is mere speculation that the letter addressed to “Lil’ Tim”
found in the apartment was intended for appellant. Officer Gill testified that
he questioned appellant’s wife about the letter and that she responded that he
just had his mail sent to the apartment. A rational juror could infer from this
statement that appellant does in fact use the nickname “Lil’ Tim.” Further, the
receipt of mail at an address is an indication of residence. Evans, 202
S.W.3d at 165 

            Perhaps the
strongest evidence to indicate appellant’s exertion of control over the
apartment came from a statement made by appellant himself. Approximately five
months prior to the search, as part of the investigation into his car windows’
having been smashed, appellant reported to the police that the apartment was his
home address. Although the statement was made five months before the search, it
provides further evidence of possession of the apartment. See Foster v.
State, No. 10-08-00170-CR, 2010 WL 965952, at *3 (Tex. App.—Waco March 10,
2010, no pet.) (mem. op., not designated for publication) (assigning weight to
defendant’s report to police including home address, one month before search on
separate occasion, as evidence of defendant’s possession of that same address).

Second, relating to the issue of possession and
control of contraband, Officer Gill testified that the confidential informant reported
seeing a man fitting the physical description of appellant, known as “Lil’ Tim,”
“cutting-up” crack cocaine in the apartment. But appellant’s conviction does
not rest solely on the informant’s observations. See Tex. Code Crim.
Proc. art. 38.141 (providing that a defendant may not be convicted under
Chapter 481 of the Health and Safety Code on the uncorroborated testimony of an
informant); Young v. State, 95 S.W.3d 448, 450–51 (Tex. App.—Houston
[1st Dist.] 2002, pet. ref’d) (considering confidential informant’s testimony
as a factor, though not the sole factor, supporting jury’s verdict).[1] Officer Gill also witnessed
appellant answering the door to the apartment and monitoring visitor traffic
in-and-out of the apartment on three separate occasions prior to the search. He
further observed appellant exchange money with people in a car parked near the
apartment. See Foster, 2010 WL 965952, at *3 (recognizing as an
affirmative link testimony about police surveillance of defendant suggesting
drug-dealing activity). 

            Several other
factors also support finding affirmative links between appellant and the
contraband. Officer Gill testified that he could smell marijuana as he approached
the unlocked bedroom. Scales were found on top of the stove hood next to the
cocaine. Appellant was in close proximity, six to eight feet, from the stove
hood where the uncovered bags of cocaine were found during the search. Further,
even though the stove hood was elevated, the drugs were reportedly in plain
view from where defendant was found when the police entered. See Allen
v. State, 249 S.W.3d 680, 695–96 (Tex. App.—Austin 2008, no pet.)
(explaining that plain view must be established from perspective of appellant’s
position when the search occurred). 

            We conclude that
the evidence, viewed in its entirety, is legally sufficient to link appellant
to the actual care, custody, control, or management of the cocaine. The logical
force of the evidence, coupled with reasonable inferences from that evidence,
is legally sufficient to support the jury verdict. Accordingly, we overrule
appellant’s first issue. 

B.     Factual
Sufficiency

In his second issue, appellant attacks the factual
sufficiency of the evidence. When reviewing a factual sufficiency challenge, we
view all the evidence neutrally. Prible v. State, 175 S.W.3d 724, 730–31
(Tex. Crim. App. 2005). We then ask whether (1) the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the
jury’s verdict seems clearly wrong and manifestly unjust, or (2) considering
the conflicting evidence, the jury’s verdict is against the great weight and
preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414–415
(Tex. Crim. App. 2006). This evaluation must not intrude upon the fact finder’s
role as the sole judge of the weight and credibility given to any witness
testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 

First, appellant argues that the jury’s verdict is
not supported by factually sufficient evidence because of the absence of
certain affirmative links to show that appellant knowingly possessed the
cocaine or had the right of possession of the apartment. He notes the following
as evidence discounting possession of the cocaine: no drugs or paraphernalia were
found on him; he was apparently not under the influence of drugs; and he did
not possess any cash.  He also emphasizes that he did not attempt to flee or
make furtive gestures during the search. Additionally, he notes the following
evidence to discount the right of possession of the apartment: no keys to the apartment
were found on him, and his name did not appear on the apartment lease. While
these are factors that the jury could have considered, the absence of evidence regarding
some of the affirmative link factors does not necessarily render the evidence factually
insufficient to sustain the conviction. Cuong Quoc Ly v. State, 273
S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d). 

Second, appellant contends that, in addition to the
absence of factors showing possession, because the location where the drugs
were found does not constitute plain view, there can be no reasonable inference
that appellant knew drugs were in the apartment. While almost all of the drugs
were concealed in some fashion, there was testimony indicating that the crack
cocaine and scales atop the stove hood were not concealed and would have been
visible to appellant by merely looking upward from his standing position at the
dining table, six to eight feet away. See Allen, 249 S.W.3d at
695–96. Even if all of the drugs were deemed not in plain view, there is still factually
sufficient evidence to support the verdict based upon the jury’s evaluation of
witness testimony. 

The jury is the trier of fact and the sole judge of
credibility of witnesses and may believe or disbelieve all, part, or none of
any witness’s testimony. Cuong Quoc Ly, 273 S.W.3d at 783. A verdict is
not clearly wrong or manifestly unjust merely because the jury resolved
conflicting testimony in favor of the prosecution or defense. Id. 

The jury was free to believe the credibility of the
witness testimony establishing that appellant lived in the apartment over other
witness testimony denying that he had ever lived in the apartment. There was officer
testimony that appellant reported the apartment as his home address, five
months prior to the search. Additionally, officer testimony of surveillance revealed
that appellant answered the door to the apartment on several occasions.
Finally, Officer Gill testified that appellant’s wife, in response to his
inquiry about the letter, admitted that he had his mail sent to the apartment. The
jury was free to reject appellant’s wife’s statements that she never discussed
the letter with Officer Gill, her statement that appellant never lived in the
apartment, and appellant’s cousin’s testimony that appellant never lived in the
apartment. 

Appellant argues, however, that even if his residence
at the apartment is established, he did not possess the cocaine but was merely
in the presence of the drugs while living in the apartment. Officer Gill’s
testimony provides ample evidence that appellant had some control over the
cocaine. The jury was free to believe and give weight to Gill’s testimony that
his confidential informant saw the defendant “cutting-up” crack cocaine. Further,
Gill’s testimony regarding the suspicious activities of appellant during his
surveillance, including monitoring visitor traffic in-and-out of the apartment
and the exchange of money with people in the parking lot, provides additional
evidence to corroborate the informant’s observation. Therefore, we find the
evidence factually sufficient to prove appellant knowingly possessed the
cocaine. Accordingly, appellant’s second issue is overruled. 

We affirm the trial court’s judgment. 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] It is unsettled as to
whether Texas Code of Criminal Procedure article 38.141 applies to out-of-court
statements by a confidential informant, as opposed to in-court informant
testimony. See Flemmings v. State, No. 5-06-00941-CR, 2007 WL 22023670,
at *2 n.4 (Tex. App.—Dallas Nov. 8, 2007, no pet.) (not designated for
publication). We need not resolve the issue here as there is corroborative
evidence.